**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| ERMOGENE BOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01223-STA-egb |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Ermogene Bond filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 1, 2013. On July 1, 2013, the ALJ denied the claim. The Appeals Council subsequently denied her request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on December 28, 1964. She has a high school education and past relevant work as a secretary, hotel clerk, sales clerk, and packer. She alleges that she became disabled beginning August 15, 2011, due to bipolar/depression, occipital neuralgia, thyroid problems, and fibromyalgia.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2015; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has severe impairments of headaches, hypothyroidism, and bipolar disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she should avoid workplace hazards such as unprotected heights and she is limited to simple or detailed, one-to-three step tasks; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the

---

[8] R. 27 – 32.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, she can perform a significant number of jobs existing in the national economy.

Plaintiff argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ erred in his assessment of the medical evidence and in the assessment of her credibility. Plaintiff's arguments are not persuasive.

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

Plaintiff contends that the ALJ should have afforded controlling weight to a medical source statement form completed by her treating physician, David Larsen, M.D. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[16] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[17]

---

[14] 20 C.F.R. § 404.1527(c)(2).

[15] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

[16] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[17] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *5 (July 2, 1996).

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[18] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[19] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[20] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[21] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[22]

In the present case, on the medical source statement form, Dr. Larsen opined that Plaintiff could lift fifteen pounds frequently and twenty pounds occasionally; she could walk for two hours without a break or for six hours total during the course of an eight-hour workday; she could sit for three hours at one time or for six hours total during the course of a workday; she was limited to light pushing/pulling.[23] Additionally, Plaintiff was limited in postural maneuvers;

---

[18] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[19] *Id.* § 404.1502, 404.1527(c)(2).

[20] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[21] 20 C.F.R. § 404.1527(c).

[22] *See* 20 C.F.R. § 404.1527(e)(2)(i).

[23] R. 611.

she could occasionally climb and balance, but she was unable to stoop, kneel, crouch, crawl, or reach; she could only use acuity or depth perception occasionally; she also had to avoid any exposure to environmental hazards like weather, humidity, vibration, hazards, or heights, and she needed to lie down two to three times per day, for one to two hours.[24]

The Court finds that the ALJ adequately explained why he gave little weight to Dr. Larsen's opinion. Dr. Larsen saw Plaintiff five times total over the course of the relevant period, mostly for complaints of hypertension and headaches, but also for transient, cold-like symptoms.[25] In his treatment notes, Dr. Larsen made little other mention of any functional complaints, and he reported no difficulties with strength, gait, or posture.[26] Dr. Larsen's records mostly consist of Plaintiff's complaints, with little discussion of any clinical problems that could be equated with work-related limitations. On the day that Dr. Larsen completed his medical source statement form, his examination was completely normal. Plaintiff reported that her "headache symptoms [were] improved and very infrequent."[27]

The ALJ pointed out that Dr. Larsen had opined Plaintiff could walk/stand for six hours and sit for six hours during a workday, indicating that Plaintiff could sit/stand/walk enough to make it through a day without lying down and contradicting his opinion that Plaintiff needed to lie down several times during the day.[28] Additionally, on Dr. Larsen's original medical source statement, there is no explanation for why he opined that Plaintiff was so limited as to never be

---

[24] R. 612.

[25] R. 511-12, 577-79, 583-85, 607.

[26] R. 581-85.

[27] R. 607-08.

[28] R. 611-12, 661.

7

able to perform postural activities.[29] None of his treatment notes reported any observations consistent with such a severe level of physical restriction. His medical reports showed that Plaintiff's musculoskeletal system was normal.[30] Additionally, Dr. Larsen did not explain why he believed that Plaintiff needed to rest so frequently. There is no evidence from Plaintiff's treatment records that any of her doctors told her she needed to lie down, nor any evidence from Dr. Larsen's own records indicating she had an impairment so severe as to require rest.

Plaintiff complains that the ALJ did not specify the exact weight assigned to Dr. Larsen's opinion. The ALJ's discussion need only be adequate for a subsequent reviewer to follow his reasoning.[31] Here, the ALJ assigned no weight to the postural and lying-down limitations in Dr. Larsen's medical source statement. Moreover, the ALJ's residual functional capacity findings in lifting, standing, and walking were similar to the exertional limits on Dr. Larsen's form, including that Plaintiff could lift up to twenty pounds, sit for six hours during a day, and walk for six hours during a day.[32]

Plaintiff argues that the Appeals Council should have reversed the ALJ's decision based on new evidence she provided after the ALJ's decision. Plaintiff submitted the same medical source statement as before, but on this version, Dr. Larsen wrote two additional comments in an effort to explain his opinion. Dr. Larsen stated that Plaintiff's postural restrictions were due to her medications, which occasionally gave Plaintiff vertigo when she changed position; he also

---

[29] R. 612.

[30] R. 519, 583-85.

[31] *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (noting that one-sentence rejection of treating physician's opinion by ALJ satisfied the "good reasons" requirement).

[32] *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004) ("[W]e find it significant that the administrative law judge did not reject wholesale the conclusions of Dr. Sonke and indeed incorporated [some of] Dr. Sonke's conclusions").

explained that he believed that she would have to lie down two to three times per day, which he said would total one to two hours per day, adding that she would need to lie down thirty to forty minutes at a time.[33]

The Appeals Council reviewed Dr. Larsen's additional comments but declined to change the ALJ's decision. The Appeals Council is not required to offer a detailed analysis of evidence generated after the ALJ's decision.[34] This Court may only consider post-ALJ-decision evidence to determine if it justifies further administrative consideration, i.e., it is new, material, and good cause was shown for not submitting it to the ALJ.[35]

The Court agrees with the Appeals Council that a remand is not necessary in this case because Dr. Larsen's explanation does not satisfy the ALJ's concerns about his opinion. In the amended medical source statement form, Dr. Larsen says that Plaintiff's medications "occasionally" gave her vertigo "when changing position," but there is no documentation of this in the medical record, and there is no explanation why occasional position vertigo would completely prevent Plaintiff from stooping or other postural movements. There is also no explanation for why he had opined that Plaintiff could never reach. Likewise, Dr. Larsen's suggested period of lying down is still inconsistent with her ability to stand/walk six hours and

---

[33] R. 661.

[34] *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

[35] *See Moore v. Comm'r of Soc. Sec.*, 2014 WL 3843791 (6th Cir. Aug. 5, 2014) ("To the extent Moore attempts to request review of evidence submitted by her treating physician after the ALJ issued its decision—namely, Dr. Knight's responses to a functional capacity questionnaire and a signed statement as to the amount of time Moore spent setting up a nebulizer and administering a treatment—that evidence is not part of the administrative record and is not subject to our review").

sit six hours over the course of a workday — limitations that were unchanged on the amended medical source statement form.

Substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's physical residual functional capacity. The ALJ properly determined that Plaintiff could perform a reduced range of light work, and Plaintiff has failed to show that she is otherwise more limited.

Next, Plaintiff complains that the ALJ incorrectly assessed her credibility. She contends the ALJ offered only a boilerplate statement finding her not credible. She also argues that Dr. Larsen's opinion and her own good work history bolstered her credibility.

A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[36] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[37] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"[38] although the ALJ's credibility finding must find support in the record.

The Court finds no merit in Plaintiff's argument that the ALJ issued a "boilerplate" credibility assessment. The ALJ sufficiently explained his credibility finding consistent with

---

[36] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[37] *Id.*

[38] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

SSR 96-7p by discussing what the medical evidence and other evidence indicated as to the intensity, persistence, and limiting effects of Plaintiff's symptoms in contrast to her allegations of disabling symptoms.[39]

Plaintiff had conservative, intermittent treatment, but none of her medical records suggest any serious limitations. None of her doctors told her to limit her activities during treatment or suggested that she needed the type of intensive care one would expect of a disabled person. An ALJ may properly consider the treatment an individual has had and whether the treatment is indicative of disability.[40] Consultative examiner John B. Woods, M.D., who saw Plaintiff prior to her amended alleged onset date, opined that Plaintiff had no clinical, physical restrictions.[41] Plaintiff's daily activities also contradicted her claims of disabling-level restrictions. Plaintiff described taking care of her own personal needs, preparing simple meals, driving a car, shopping for groceries with a friend, and going to church twice per month.[42]

---

[39] *See Potter v. Colvin*, 2013 WL 4857731 at *14-15 (E.D. Tenn. Sept. 11, 2013) (rejecting the plaintiff's argument the ALJ erred in employing a "boilerplate" credibility finding). *See also Light v. Astrue*, 2013 WL 1305622 *10 (E. D. Tenn. 2013) (discussing use of boilerplate credibility language and noting that "while the ALJ used the 'template' language, she provided additional reasons for discounting the Plaintiff's credibility pursuant to 20 C.F.R. § 404.1529(c)").

[40] *See Curler*, 561 F. App'x at 473 ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations; SSR 96-7p (" [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . .").

[41] R. 416-21.

[42] *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929.

Plaintiff argues the ALJ overlooked her good work history. A claimant's work history is an appropriate factor that may be weighed in assessing credibility.[43] However, while a good work history may bolster a claimant's credibility,[44] it alone does not require the ALJ to find a claimant credible.[45]

The Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition and the ALJ found that her impairments could reasonably cause the kind of limitations alleged by Plaintiff, Plaintiff's statements about the intensity, persistence, and limiting effect of her alleged symptoms were not entirely credible because they were inconsistent with the evidence of record. The ALJ carefully considered the record as a whole. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[46] The Commissioner may carry this burden by applying the grids[47] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the

---

[43] *See* 20 C.F.R. § 404.1529(c)(3) (explaining that in evaluating the intensity and persistency of symptoms, evidence about a claimant's prior work may be considered).

[44] S*ee White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) ("White's extensive work history and attempts to continue working despite his disability support his credibility ....").

[45] *See Curran-Kicksey v. Barnhart*, 315 F.3d 964, 970 (8th Cir. 2003) (holding that the ALJ properly found the claimant not disabled despite her consistent work history).

[46] *Jones*, 336 F.3d at 474.

[47] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

claimant has transferable work skills.[48] Here, the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations. To determine the extent that these limitations eroded the unskilled light occupational base, the ALJ sought the testimony of a vocational expert who testified that Plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a weld inspector, sorter, and packer.[49] Thus, substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

    **IT IS SO ORDERED.**

    s/ S. Thomas Anderson
    S. THOMAS ANDERSON
    CHIEF UNITED STATES DISTRICT JUDGE

    Date: July 10, 2017

---

[48] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[49] R. 32.